Gilmore, J.
The plaintiff in error was jointly indicted with Albert Wolf, in the court of common pleas, for maliciously entering a store-house, and attempting to steal personal property of the value of more than thirty-five dollars, and he was separately tried, found guilty as-charged, and sentenced to the penitentiary.
*300 The reversal of the sentence and judgment thereon is the object of this proceeding.
None of the several errors assigned are found to be well taken, and only those of sufficient importance to be reported will be noticed.
First It is contended that the section of the statute, under which the indictment was found, does not embrace the •crime for which the defendant below was indicted, and that the judgment is, therefore, contrary to law.
The indictment was found under section 6, title 1, chapler 4 of the penal code (74 Ohio L. 249), which, so far as necessary to quote it, reads as follows : “ Whoever maliciously, either in the daytime or night season, enters any •dwelling-house, . . . store-house, . . . barn, or stable, and attempts to commit a felony, shall be imprisoned In the penitentiary not more than ten years nor less than •one year.”
This is a re-enactment and amendment of section 16 of the crimes act of. 1835. S. & C. 407.
The two sections are substantially the same in all respects •except this — that where section 6 provides in general terms .against “attempts to commit a felony,” section 16 inovides specifically against attempts “ to kill, disfigure, or maim any person, rob, stab, commit a rape, or arson.” It is plain that attempts to commit grand larceny were not in•cluded in this latter section, and the question is, whether .such an attempt falls within the mischiefs sought to be provided against by section 6 ; in other words, whether an attempt to commit grand larceny is an attempt to commit a felony within the meaning of section 6.
The object must be to arrive at the purpose and intent of the legislature, in changing the phraseology of section 16, .and substituting that of section 6 in the re-enactment.
The word felony is a technical word, and it is to be understood in its recognized legal sense, unless the legislature, in the act in which it is found, has, by an interpretation clause ■or otherwise, given the sense in which it is understood when used in the act. When this is done, the word is to *301 be -understood in the prescribed sense, whether this be an enlargement or contraction of its usually recognized legal sense; and the word will be applied in the sense given to it by the interpretation clause of the act, unless to do so-would he repugnant to reason, or to other provisions of the same act.
An interpretation of the word felonies is given in section 2, title 1, chapter 1 of the crimes act (74 Ohio L. 241), as follows r “ Offenses which may be punished by death, or by imprisonment in the penitentiary are felonies; all other offenses are misdemeanors.”
Following this definition, in order to ascertain whether maliciously entering a store-house, and attempting to-commit grand larceny, is or is not an attempt to commit a felony, within the meaning of section 6, it becomes necessary to inquire whether grand larceny, if it had been committed, would have been a crime punishable by imprisonment in the penitentiary.
In section 25, title 1, chapter 4 of the crimes act, larceny is-thus defined : “ Whoever steals anything of any value is guilty of larceny, and shall, if the value of the thing stolen is-thirty-five dollars or more, be imprisoned in the penitentiary not more than seven nor less than one year.”
The punishment here annexed to grand larceny shows it to be a felony within the meaning of the interpretation clause above quoted, and, hence, it follows that maliciously entering a store-house, and attempting to commit grand larceny, is an attempt to commit a felony within the-meaning of section 6, under which the indictment in this-case was found.
The difference in the phraseology of the new section (6) and the old section (16) is in such marked contrast, as to-clearly indicate an intention on the part of the legislature-to change section 16, and to give to section six an enlarged operation. That it was within- the power of the-legislature to do this, can not be questioned. And we fail to see wherein the changing of section 6 so as to bring; within its operation, offenses not named in section 16, as for *302 instance, the offense for which the indictment was found in this case, is repugnant to reason. But it is, in effect, contended by counsel for plaintiff’ in error, that if section 6 is held to embrace the offense for which the indictment was found, it is so inconsistent- with, and repugnant to, sections 5, 7, and 25 of the- same title and chapter, as to negative the idea that the legislature could have intended section 6 to embrace the offense in question. It is, we think, a suffi-cient answer to this to say, that section 6 defines an offense that in its essential elements is different from the offenses -defined in the other sections named; and that while the punishment annexed to offenses under section 6 may seem 'to be excessive, as compared with the punishment annexed to ■offenses under the other sections, still this seeming disparity in the degrees of punishment, is not sufficient to warrant us in assuming that the legislature did not intend that the offense in question should be embraced in section •6, especially when such an assumption would be against the plain meaning of the words of the section.
This objection is, therefore, untenable.
Second. It is assigned for error that the court refused to ■permit certain written instructions that were requested by the prisoner, and given by the court, to be taken bythe jury in their retirement.
Before the commencement of the argument, neither of the parties requested the court to reduce either special in•structions or its general charge to writing, and, at the conclusion of the argument, the court charged the jury •orally, after which the prisoner presented certain special instructions, in writing, which, at his request, were given to the jury by the court.
Thereupon the prisoner requested the court to permit the special instructions so given to be taken by the jury in ■ their retirement, which request was refused by the court, and the prisoner excepted.
The duty of the court, in respect to written charges, is pointed out in the 5th and 7th clauses of section 83, title 2, •chapter 6 of the penal code (74 Ohio L. 349). .
*303 - The 5th clause relates exclusively to special instructions •on points of law that either party may request at the conclusión of the evidence, and which are required to be reduced to writing by the court, if either party requests ic. The manifest purpose of this provision is to enable counsel, in the argument to the jury, to advisedly apply the facts to the law of the case, as previously settled by the coart in giving or refusing to give the special instructions on the points of law requested. These instructions, if insisted on by the party, requesting them, are to be reduced to writing before the argument is commenced, so that counsel may bave the benefit of them in the argument.
Under the provisions of the 7th clause, if either party ,-desires the court to reduce its general charge, or special instructions, other than those provided for in the 5th clause, to writing, the court must be requested to do so before the .argument to the jury is commenced; otherwise the court is not required to do so. The object of this requirement ■probably is to give the court time and opportunity to reduce its charge to writing during the progress of the argument to the jury, and thus save the delay that would be consequent upon reducing the charge to writing, if the •court wTas required to do it, at the request of either party, made after the conclusion of the argument. But, be this as it may, the only charges that the court is required to reduce to writing, under either clause of the section, are .such charges or instructions as it is requested to reduce to writing before the argument is commenced ; and it is too late to make the request after the argument is commenced. Jt follows, that where no such request was made before the argument was commenced, the court was not bound to reduce its charge to writing, and if the court, after an oral ■charge to the jury, gave in addition thereto, special instructions in writing, at the request of either party, the court was not required to permit such special instructions to go with the jury in their retirement. In other words, special instructions given to the jury, in writing, after argument, *304 are not required to be taken by the jury in their retirement, where the principal charge is not required to be in writing.
We are not to be understood as holding that where a general charge has been reduced to writing, in pursuance of a request made by either party before the commencement of the argument, that either party is to be precluded from making special requests at the conclusion of the general charge, or that the court is not to permit such special requests, when given, to be taken by the jury in their retirement. On the contrary, such special instructions, when so given, operate as a written, not oral, qualification or modification of the written charge, and constitute a part of it, and the entire charge, as thus qualified or modified, is to go to the jury.
The court did not err in refusing to send the special written requests with the jury.
Third. It is assigned for error, that the prisoner was not in court when the motion for a new trial in his case was argued and overruled.
It does not afiirmatively appear of record, whether the prisoner was voluntarily absent or not; but it is assumed that he was in jail, and that he was not ordered to be brought in at the hearing of the motion. It does appear, however, that when the prisoner was brought in for sentence, he was informed, by the court, that a motion for a new trial had been made and overruled in his absence, to which he then made no objection, and none was in fact made till after sentence, when it was assigned for error in this court.
There is no doubt that the prisoner had a constitutional right (art. 1, § 10) to appear in court at his trial, and defend in person and by counsel, and to meet the witnesses face to face, before an impartial jury. But it is doubtful whether it is necessary for the defendant to be present in court during the agitation of questions of law, between the rendition of the verdict and sentence. Some of the authorities seem to indicate that it is not. 3 Am. Crim. L. *305 •§ 2998; Bishop’s Crim. Pr. § 277; Jewell v. Commonwealth, 10 Harris, 102.
But, conceding that he had the right to be present during the argument and overruling of the motion for a new trial in his case, we all think it was a- right that he could waive; and that where, as in this case, he had knowledge of the fact, and made no objection till after sentence, lie-must be held to have waived his right to object to the sentence and judgment on this ground. We do not decide-what the effect would have been if there had been no such waiver. Under the circumstances of this ease, the fact, ■that the prisoner was not present when the motion for a. new trial was argued and overruled, furnishes no sufficient, ground for reversing the sentence.

Motion overruled.